**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

HEATHER GILLMAN, through next friend
and mother Ardena Gillman;

     Plaintiff,

                                 No. 5:08-cv-34 RS/MD

v.

SCHOOL BOARD FOR HOLMES COUNTY,
FLORIDA; and DAVID DAVIS, in his official
capacity as principal of Ponce de Leon High
School,

     Defendants.

_____/

**PLAINTIFF GILLMAN'S MOTION FOR A**
**PRELIMINARY INJUNCTION**
**AND SUPPORTING MEMORANDUM OF LAW**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................2

BACKGROUND .......................................................................................3

ARGUMENT .............................................................................................8

    I.     There is a substantial likelihood that plaintiff will prevail on the
           merits of her case because plaintiff's speech is a pure expression of
           support for gay civil rights, and is therefore "protected speech"
           under the First Amendment of the United States Constitution. ..................8

          A.     Under *Tinker* and this Circuit's application of *Tinker,*
                  Defendants will not be able to show—as they must—that
                  the censored speech itself would "materially and
                  substantially disrupt the work and discipline of the school." ........10

          B.     Even if plaintiff's speech was disruptive—which it was
                  not—Defendants may not use the disruptive actions of
                  other students to determine the parameters of plaintiff's
                  constitutional rights.......................................................................12

          C.     Plaintiff's speech is respectful, positive and supportive of
                  gay and lesbian persons, unlike harassing speech that
                  properly could be limited. ..............................................................15

          D.     Even if plaintiff's speech was disruptive under *Tinker*—
                  which it is not—plaintiff has a separate independent right
                  to be free from viewpoint discrimination.......................................17

    II.    Plaintiff is suffering and will continue to suffer irreparable injury
           unless this Court issues an injunction. ........................................................18

    III.   The threatened injury to plaintiff outweighs whatever harm the
           preliminary injunction could cause Defendants.........................................19

    IV.   The relief sought by Ms. Gillman will serve the public interest...............19

CONCLUSION...........................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU* v. *Reno,*
  929 F. Supp. 824 (E.D. Pa. 1996) ..................................................................20

*Ashcroft* v. *Free Speech Coal.,*
  535 U.S. 234 (2002) ........................................................................................16

*Barber* v. *Dearborn Pub. Sch.,*
  286 F. Supp. 2d 847 (E.D.Mich. 2003) .....................................................14, 21

*Bethel Sch. Dist. No. 403* v. *Fraser,*
  478 U.S. 675 (1986) ........................................................................................15

*Bonner* v. *City of Prichard,*
  661 F.2d 1206 (11th Cir. 1981) (en banc) .....................................................11

*Boyd County High Sch. Gay Straight Alliance* v. *Bd. of Educ.,*
  258 F. Supp. 2d 667 (E.D. Ky. 2003) ............................................................14

*Burnside v. Byars,*
  363 F.2d 744 (5th Cir. 1966) .........................................................................11

*Butts* v. *Dallas Indep. Sch. Dist.,*
  436 F.2d 728 (5th Cir. 1971) .........................................................................13

*Cafe Erotica v. St. Johns County,*
  360 F.3d 1274 (11th Cir. 2004) .......................................................................2

*Chambers* v. *Babbitt,*
  145 F. Supp. 2d 1068 (D. Minn. 2001) ...........................................................21

*Chandler* v. *McMinnville Sch. Dist.,*
  978 F.2d 524 (9th Cir. 1992) .........................................................................11

*De Jonge v. Oregon,*
  299 U.S. 353 (1937) ........................................................................................20

*Denno* v. *Sch. Bd. of Volusia County,*
  218 F.3d 1267 (11th Cir. 2000) .....................................................................15

Page (s)

*Elrod* v. *Burns*,
427 U.S. 347 (1976)..................................................................................3, 19

*Fricke* v. *Lynch*,
491 F. Supp. 381 (D.R.I. 1980)................................................................14

*Hazelwood Sch. Dist. v. Kuhlmeier*,
484 U.S. 260 (1988)..................................................................................15

*Henkle* v. *Gregory*,
150 F. Supp. 2d 1067 (D. Nev. 2001).......................................................14

*Holloman ex. rel. Holloman* v. *Harland*,
370 F.3d 1252 (11th Cir. 2004) ...................................................11, 13, 17

*Iowa Right to Life Comm., Inc.* v. *Williams*,
187 F.3d 963 (8th Cir. 1999) ....................................................................20

*Keyishian* v. *Bd. of Regents*,
385 U.S. 589 (1967)..................................................................................20

*KH Outdoor, LLC* v. *City of Trussville*,
458 F.3d 1261 (11th Cir. 2006) .....................................................3, 19, 20

*Morse* v. *Frederick*,
127 S. Ct. 2618 (2007)........................................................................10, 15

*Schiavo ex rel. Schindler* v. *Schiavo*,
403 F.3d 1223 (11th Cir. 2005) ..................................................................8

*Scott* v. *Sch. Bd. of Alachua County*,
324 F.3d 1246 (11th Cir. 2003) ................................................................15

*Shanley* v. *Northeast Indep. Sch. Dist.*,
462 F.2d 960 (5th Cir. 1972) ....................................................................11

*Siebert* v. *Allen*,
506 F.3d 1047 (11th Cir. 2007) ..................................................................8

*Terminiello* v. *City of Chicago*,
337 U.S. 1 (1949)................................................................................12, 20

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
393 U.S. 503 (1969)..................................................................... passim

**Page (s)**

*Turner Broad. Sys., Inc.* v. *FCC*,
 512 U.S. 622 (1994) ...........................................................................................20

*Virginia* v. *Black*,
 538 U.S. 343 (2003) ...........................................................................................16

*Zamecnik ex rel, Zamecnik* v. *Indian Prairie School District No. 204 Board of Education*,
 2007 WL 1141597 (N.D.Ill. 2007) ....................................................................15


## Statutes

Fla. Stat. § 1006.14 (2007) ......................................................................................16


## Other Authorities

Fed. R. Civ. P. 65(a) ..................................................................................................1

Holmes Dist. Sch. Bd., Code of Student Conduct (2007-08)
 http://hdsb.org/ sitedocumentation/studentCOC0708.pdf ............................7, 16, 17

N.D. Fla. Local Rule 7.1(B) ....................................................................................21

N.D. Fla. Local Rule 7.1(D) ......................................................................................1

Ponce de Leon High School, *Beliefs, Vision, & Mission*
 http://pdlhs.hdsb.org/beliefs ...............................................................................9, 20

U.S. Const. amend. I..................................................................................................8

## MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65(a), Plaintiff HEATHER GILLMAN hereby respectfully requests that this Court enter a Preliminary Injunction against Defendants HOLMES COUNTY SCHOOL BOARD and DAVID DAVIS in this matter for the reasons set forth in the Complaint and the following Memorandum in Support of Plaintiff's Motion for Preliminary Injunction with its supporting Declarations and Exhibits.  Pursuant to N.D. Fla. Local Rule 7.1(D), Plaintiff respectfully requests oral argument, which Plaintiff estimates may require one hour.

**WHEREFORE**, by this Motion, Plaintiff Gillman respectfully requests that this Court enter a Preliminary Injunction enjoining Defendants from (1) restraining, prohibiting or suppressing Ms. Gillman's expression of support for the respect, equal treatment, and acceptance of gay and lesbian persons, including, but not limited to, the phrases and symbols listed in the November 2, 2007 letter (Exhibit 1, attached), and (2) taking retaliatory action against Plaintiff for challenging this deprivation of constitutional rights.

**WHEREFORE, IN THE ALTERNATIVE,** in the event that the Court believes that limited factual discovery would assist in its consideration of Plaintiff's Motion, Plaintiff respectfully requests that the Court:  (A) at the Court's convenience, set the hearing on Plaintiff's Motion on a date no later than May 15, 2008; (B) set an expedited discovery schedule that would permit depositions and written discovery from key witnesses involved in the case in advance of the Hearing; and (C) set a briefing

schedule that would permit the parties to address the merits of the Motion in light of the factual record as developed in the expedited discovery process.

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

### PRELIMINARY STATEMENT

This is a free speech case on behalf of Heather Gillman, a junior at Ponce de Leon High School.  The case presents the issue of whether Defendants, who are public school officials, may lawfully place a prior restraint on a student's political speech that supports the fair treatment of gay and lesbian persons.  Defendants have declared it impermissible for Ms. Gillman, and any other student at Ponce de Leon, to wear clothing, stickers or buttons with certain phrases like "I support gays" and "Equal, Not Special Rights," or certain symbols—including rainbows and pink triangles—that demonstrate support for the fair treatment of gay and lesbian persons.  The United States Constitution prohibits this type of censorship of public school students, and therefore Defendants should be enjoined from continuing to censor plaintiff's speech.

Defendants' prior restraint of Ms. Gillman's speech is unconstitutional. Defendants cannot meet their burden of showing that Ms. Gillman's display of rainbow stickers, rainbow belts, and other positive, gay-supportive slogans would "materially and substantially disrupt the work and discipline of the school."  *Tinker* v. *Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513 (1969); *see also Cafe Erotica* v. *St. Johns County,* 360 F.3d 1274, 1282 (11th Cir. 2004) (noting that that "any system of prior restraint ... bear[s] a heavy presumption against its constitutional validity.") (citation omitted).  In fact, Ms. Gillman has worn an "I support gays" t-shirt, a rainbow t-shirt, and a rainbow

belt to school without incident.  (Declaration of Heather Gillman ("Gillman Decl."), Ex. 3,

¶ 7.)  On those occasions, Ms. Gillman's speech only inspired a peaceful dialogue with

another student about her belief that gay and lesbian persons should be treated equally.

(*Id.*)  Furthermore, Defendants' claim that Ms. Gillman's speech would indicate

membership in an "illegal organization" is untenable.  There is no gay or lesbian

organization at Ponce de Leon—although it would not be illegal if one did exist—nor

does expressing support for gay civil rights indicate membership in such an organization.

Absent a Court order, Defendants will continue to violate Ms. Gillman's

First Amendment right to free speech and cause her irreparable harm.  "The loss of First

Amendment freedoms, for even minimal periods of time, unquestionably constitutes

irreparable injury."  *Elrod* v. *Burns*, 427 U.S. 347, 373 (1976) (citation omitted), *followed

by KH Outdoor, LLC* v. *City of Trussville*, 458 F.3d 1261, 1271-72 (11th Cir. 2006).  For

these reasons, and the reasons set forth below, plaintiff respectfully submits that the

Court should grant her motion for a preliminary injunction.

## BACKGROUND

Plaintiff Heather Gillman is a junior at Ponce de Leon High School

("Ponce de Leon").  Defendant David Davis ("Principal Davis") is the Principal at Ponce

de Leon and Defendant School Board of the Holmes County School District ("School

Board") controls, operates, supervises, and sets policy for Ponce de Leon.

Although she is heterosexual, Ms. Gillman supports the respect, equal

treatment and acceptance of gay and lesbian persons in society.  She has expressed her

support of gay and lesbian persons at school by wearing a belt in rainbow colors, a

rainbow t-shirt, and a t-shirt that reads, "I support gays." (Gillman Decl., Ex. 3, ¶ 7.) She also wishes to express her beliefs by putting rainbow stickers on her binders and book covers, and by wearing pink armbands and rainbow-decorated t-shirts with slogans stating "God Loves Me Just The Way I Am" and "Equal, Not Special Rights." (*See id.*)

Principal Davis and the School Board, however, have banned explicitly these slogans and symbols, as well as similar forms of affirmative expression that support the fair treatment of gay and lesbian persons. Principal Davis also has suspended students who have expressed their support for the equal treatment of gay and lesbian persons at school. (*See* Sch. Bd. Letter (Nov. 12, 2007), Ex. 2; Gillman Decl., Ex. 3, ¶ 3; Declaration of Adrienne Harris ("Harris Decl."), Ex. 4, ¶ 6.)

The events leading to this lawsuit began in the fall of 2007. Between September 12 and September 21, 2007, Principal Davis repeatedly called Ms. Adrienne Harris, the plaintiff's cousin and a student at Ponce de Leon, and questioned her about what he referred to as "gay pride at school." (Harris Decl., Ex. 4, ¶ 3; Gillman Decl., Ex. 3, ¶3.) During these meetings, Principal Davis also inquired about Ms. Harris's sexual orientation. (Harris Decl., Ex. 4, ¶ 4.) When Ms. Harris informed him that she is a lesbian, he admonished her that being gay was "not right," "against the Bible," and that he hoped that she would not "go down that road." (*Id.* ¶ 5.) He also warned Ms. Harris that she should not wear gay-pride clothing, and should not go anywhere near the middle-school girls because he did not want them "going down the wrong road either." (*Id.*) Principal Davis told Ms. Harris that he would suspend her if she did not obey. (*Id.*)

On Friday, September 21, 2007, and Monday, September 24, 2007, Principal Davis suspended a handful of students—including Ms. Harris—for five school days for participating in a perceived "gay-pride movement."  (Harris Decl., Ex. 4, ¶ 6; *compare* Declaration of Benjamin Stevenson ("Davis Notes"), Ex. 5, p. 36 (listing "illegally organizing" and "disruption of the education process" as reasons for the suspension).)  Principal Davis also threatened a number of students with suspension if they wore clothing and wrote phrases or symbols that demonstrated their support of gay and lesbian persons.  (Gillman Decl., Ex. 3, ¶ 3; Harris Decl., Ex. 4, ¶ 5; Davis Notes, Ex. 5, p. 29 (noting Principal Davis's warning to a student "not to write G.P. [Gay Pride] on her person or paper or draw rainbow posters . . . [because the] [n]ext event could result in OSS [out of school suspension]").

After hearing about the suspensions, Ms. Gillman was moved to express her own political beliefs and to show support for her cousin.  (Gillman Decl., Ex. 3, ¶ 7.) The day after Ms. Harris's first day of suspension, Ms. Gillman wore her cousin's rainbow belt and a handmade shirt stating "I support gays" to school.  (*Id.*)  Ms. Gillman also wore the rainbow belt to school on the succeeding Thursday and Friday.  (*Id.*)  At no time did Ms. Gillman's wearing of the rainbow belt and the "I support gays" shirt cause any disruption at Ponce de Leon.  (*Id.*; Harris Decl., Ex. 4, ¶ 7.)  For the most part, teachers and students at Ponce de Leon are accepting of gay and lesbian students, and have discussed their views about sexual orientation in a civil and peaceful manner. (Gillman Decl., Ex. 3, ¶ 7.)  Indeed, the only reaction to Ms. Gillman's shirt and belt was

from a student who asked why Ms. Gillman supported gays.  (*Id*.)  This question led to a respectful discussion about Ms. Gillman's beliefs.  (*Id*.)

Ms. Gillman subsequently sought clarification from the School Board about its position regarding student expression in support of the respect, equal treatment and acceptance of gay and lesbian persons.  (Gillman Decl., Ex. 3, ¶ 4.)  On November 2, 2007, Ms. Gillman and her cousin, through legal counsel, sent a letter to the School Board's attorney seeking guidance regarding exactly which phrases and symbols in support of gay and lesbian persons were permitted to be worn or written at Ponce de Leon without being punished.  (Gillman Letter (Nov. 2, 2007), Ex. 1.)  Specifically, Ms. Gillman and her cousin sought permission to express their beliefs through the following positive phrases and symbols:

(a)     "Gay Pride" or "GP"

(b)     "Gay?  Fine by Me!"

(c)     "I'm Straight, but I vote Pro-Gay"

(d)     "I Support Equal Marriage Rights"

(e)     "Equal, Not Special Rights"

(f)     "God Loves Me Just the Way I Am" (in rainbow colors or in a rainbow)

(g)     "Pro-Gay Marriage"

(h)     "Sexual Orientation is Not a Choice.  Religion, However, Is."

(i)     A rainbow in the shape of an arch or flag

(j)     A triangle with one corner at the bottom, rainbow or pink colored

    (k)       A pink armband or an armband with a triangle on it

    (l)        "I Support My Gay Friends"

    (m)     "I Support Gays"



    (n)

    (o)

    (p)

*Id.*

By letter dated November 12, 2007, the School Board, through its attorney, advised Ms. Gillman that School Board policy prohibited the display of any and all of the phrases or symbols listed in the November 2, 2007 letter.  (Gillman Decl., Ex. 3, ¶ 5; Sch. Bd. Letter (Nov. 12, 2007), Ex. 2.)  The School Board justified this censorship on the ground that such expression at Ponce de Leon would "likely be disruptive and interfere with the educational process."  (Sch. Bd. Letter (Nov. 12, 2007), Ex. 2.)  In the letter, the School Board also stated that students could not wear the requested symbols because they indicated membership in an "illegal organization."  (*Id.*)  The School Board defined "illegal organization" as "any attempt to use the school day for activities that are not school related or school sponsored."  (*Id.*; *compare* Holmes Dist.

Sch. Bd., Code of Student Conduct (2007-08), p. 9, *available at* http://hdsb.org/

sitedocumentation/studentCOC0708.pdf (last visited Feb. 11, 2008)).

Because Ms. Gillman reasonably fears that Principal Davis will punish her

for violating School Board policy as set forth in its November 12 letter, as well as in

Principal Davis's oral warnings to students, she has been deterred from fully expressing

her support for gay civil rights at school.  On January 31, 2008, Ms. Gillman commenced

this action to challenge the School Board policy for violation of her constitutional right to

freedom of expression. (Gillman Decl., Ex. 3, ¶ 6.)

## <u>ARGUMENT</u>

## LEGAL STANDARD FOR PRELIMINARY INJUNCTION

A district court should grant preliminary injunctive relief when the movant

establishes four factors: "(1) a substantial likelihood of success on the merits; (2) that

irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury

outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the

relief would serve the public interest."  *Siebert* v. *Allen*, 506 F.3d 1047, 1049 (11th Cir.

2007) (citing *Schiavo ex rel. Schindler* v. *Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir.

2005)).

## ARGUMENT

**I.      There is a substantial likelihood that plaintiff will prevail on the merits of her case because plaintiff's speech is a pure expression of support for gay civil rights, and is therefore "protected speech" under the First Amendment of the United States Constitution.**

The First Amendment of the Constitution states that "Congress shall make

no law . . . abridging the freedom of speech." U.S. CONST. amend. I.  Ms. Gillman's

desire to put rainbow stickers on her notebooks, or wear a t-shirt that states "I Support Gay Rights" are examples of the most fundamental type of speech that the First Amendment protects.  Ms. Gillman wishes to publicly, silently and peacefully articulate her political belief that gay and lesbian persons should be treated fairly.  Her freedom to do so falls squarely within the protections afforded by the First Amendment, and she is not stripped of these protections when she enters the doors of her public high school.  *See Tinker*, 393 U.S. at 506 ("It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.").

Indeed, the Supreme Court has recognized that schools play an essential role in the formation of a free and tolerant society: "[t]he vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools.  The classroom is peculiarly the marketplace of ideas." *Tinker*, 393 U.S. at 512 (citations omitted).  Ponce de Leon's own statement of its *Belief, Vision, & Mission*, as articulated on the school's website, also recognizes the administration, faculty and staff's collective responsibility to encourage Ponce de Leon students to "promote equity, tolerance, understanding, and acceptance of all people," and states that the school "support[s] an educational program which accommodates individuality rather than uniformity." *Id., available at* http://pdlhs.hdsb.org/beliefs (last visited Feb. 11, 2008).  Ms. Gillman's rainbow stickers and t-shirts are positive expressions of tolerance, acceptance, and understanding—expressions that both the Supreme Court and Ponce de Leon state are worthy of promotion and protection.

A.   Under *Tinker* and this Circuit's application of *Tinker,* Defendants will not be able to show—as they must—that the censored speech itself would "materially and substantially disrupt the work and discipline of the school."

Ponce de Leon school officials may not regulate student speech unless they can demonstrate that the speech or expression will "materially and substantially disrupt the work and discipline of the school." *Tinker*, 393 U.S. at 513; *see also id*. at 509 (noting that it is the burden of school officials to justify censorship of student speech because as a general rule, students maintain free speech rights at school); *Morse* v. *Frederick,* 127 S. Ct. 2618, 2636-37 (2007) (Alito, J., Kennedy, J., concurring) ("The opinion of the Court correctly reaffirms the recognition in *Tinker* [] of the fundamental principle that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate").

In *Tinker*, the Supreme Court overruled a public school's ban on students wearing black armbands to protest the Vietnam War.  The Court stated that "school officials do not possess absolute authority over their students," and that "[s]tudents in school as well as out[side of school] are persons under our Constitution."  After concluding that students are "possessed of fundamental rights which the State must respect," the Court held that it was unconstitutional for the school authorities to censor the armband-wearing students, despite the school's "urgent wish to avoid the controversy which might result from the expression." *Tinker*, 393 U.S. at 510-11.

Accordingly, under *Tinker*, students have the right to express their views freely, so long as their chosen mode of expression does not "materially and substantially disrupt the work and discipline of the school." *Id*. at 513; *see also Morse*, 127 S. Ct. at

2626 (reaffirming *Tinker's* "substantial disruption" test).  A school administrator's fear of future disruption or interference must have a genuine basis in fact and be reasonable— "undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Tinker,* 393 U.S. at 508.  Instead, "'there must be demonstrable factors that would give rise to any reasonable forecast by the school administration of "substantial and material" disruption of school activities before expression may be constitutionally restrained.'" *Holloman ex. rel. Holloman* v. *Harland*, 370 F.3d 1252, 1273 (11th Cir. 2004) (quoting *Shanley* v. *Northeast Indep. Sch. Dist*., 462 F.2d 960, 974 (5th Cir. 1972).[1]  Certainly, school officials may not censor speech simply because they disagree with the student's views.  *Tinker,* 393 U.S. at 511 ("Students in school . . . may not be confined to the expression of those sentiments that are officially approved.").

Defendants cannot show that Ms. Gillman's displaying of rainbow stickers, belts and t-shirts in support of gay and lesbian persons would cause "material and substantial interference with schoolwork and discipline." *See Burnside* v. *Byars,* 363 F.2d 744, 745 (5th Cir. 1966) (upholding right of public school students to wear "'freedom buttons' as a means of silently communicating an idea and to encourage the members of their community to exercise their civil rights"); *Chandler* v. *McMinnville Sch. Dist.,* 978 F.2d 524, 531 (9th Cir. 1992) ("The passive expression of a viewpoint in the form of a

---

[1] *See Bonner* v. *City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent for the Eleventh Circuit all decisions of the Fifth Circuit handed down prior to close of business on September 30, 1981).

button worn on one's clothing is certainly not in the class of those activities which inherently distract students and break down the regimentation of the classroom.").

The symbols or slogans that Ms. Gillman wishes to display at school do not encourage students to misbehave, nor do they incite violence or denigrate other students. On the contrary, Ms. Gillman's speech uses positive language and imagery to express her belief that gay and lesbian persons should be treated fairly. Indeed, on the occasions that she wore her "I support gays" t-shirt and rainbow belt to school, the only result was a respectful discussion with another student about why she supported gay civil rights—the very type of interaction among students that the First Amendment protects. (*See* Gillman Decl., Ex. 3, ¶ 7.)

**B.    Even if plaintiff's speech was disruptive—which it was not— Defendants may not use the disruptive actions of other students to determine the parameters of plaintiff's constitutional rights.**

In *Tinker*, the Supreme Court expressly rejected the argument that public school officials could properly discipline students wearing black armbands because other students had reacted disruptively to them. *Tinker,* 393 U.S. at 505-06, 508 (citing *Terminiello* v. *City of Chicago*, 337 U.S. 1 (1949)). Despite the fact that other students made hostile remarks to the students wearing armbands, and that other students argued about the armbands instead of paying attention in class, the Court found that such discipline violated the armband-wearing students' rights. *Tinker,* 393 U.S. at 505-08; *id.* at 518 (Black, J., dissenting). In addition, the Court found that the possibility that the armbands might lead other students to start an argument or cause a disturbance still was

insufficient grounds to prevent the armband-wearing students' freedom of expression.  *Id.* at 508.

In *Holloman,* school officials punished a student who had silently raising his fist during a daily flag salute instead of reciting the Pledge of Allegiance with the rest of the class.  *Id.,* 370 F.3d at 1260.  School officials justified their punishment on the ground that the student's demonstration disturbed, and would lead to further disruptions by, other students.  *Id.* at 1274-75.  The Eleventh Circuit, however, rejected the school's contention that it was appropriate to censor the plaintiff out of concern that other students would behave disruptively.  *Id.* at 1275.  Drawing an analogy to another case in which school officials had improperly prohibited a male student from wearing long hair because other students had reacted disruptively, the Eleventh Circuit stated, "[t]he fact that other students might take such a hairstyle as an incitement to violence is an indictment of those other students, not long hair."  *Id.* at 1275.

The Eleventh Circuit concluded that the plaintiff's expression was constitutionally protected, and that school officials had the duty to punish the disruptive behavior—not prohibit the plaintiff's speech—because "allowing a school to curtail a student's freedom of expression based on such factors turns reason on its head."  *Id.* at 1275-76; *see also Butts* v. *Dallas Indep. Sch. Dist.*, 436 F.2d 728, 731 (5th Cir. 1971) ("We do not agree that the precedential value of the [*Tinker*] decision is nullified whenever a school system is confronted with disruptive activities or the possibility of them.  Rather we believe that the Supreme Court has declared a constitutional right which

school officials must nurture and protect and not extinguish, unless they find the circumstances allow them no practical alternative.").

In the context of expression by high school students relating to gay issues, courts have upheld the rights of students to be openly gay at high school, *see Henkle* v. *Gregory*, 150 F. Supp. 2d 1067, 1076 (D. Nev. 2001); to attend the high school prom with a same-sex date, *see Fricke* v. *Lynch*, 491 F. Supp. 381, 385 (D.R.I. 1980) (granting preliminary injunction); and to form gay-straight alliance clubs on high school campuses, *see Boyd County High Sch. Gay Straight Alliance* v. *Bd. of Educ*., 258 F. Supp. 2d 667, 690 (E.D. Ky. 2003) (granting preliminary injunction).

In each of the above cases, school officials argued that the disruptive and sometimes violent reactions of other students were reasons to silence speech about sexual orientation and gay civil rights. Yet in each situation, the courts held that school officials could not censor student speech on those grounds. *See, e.g., Boyd County High Sch. Gay Straight Alliance*, 258 F. Supp. 2d at 688 ("*Tinker* and *Terminiello* are designed to prevent Defendants from punishing students who express unpopular views instead of punishing the students who react to those views in a disruptive manner."); *Fricke,* 491 F. Supp. at 385 (holding that school officials had a duty to enact "appropriate security measures" to address potential disruptive conduct instead of censoring the student's expression); *see also Barber* v. *Dearborn Pub. Sch*., 286 F. Supp. 2d 847, 849, 856-57 (E.D.Mich. 2003) (holding that school could not ban shirt labeling President Bush an "International Terrorist," where "there is no evidence that the t-shirt created any

disturbance or disruption," even though another student confronted plaintiff in an "angry" and "tense" way about the shirt).

C.    **Plaintiff's speech is respectful, positive and supportive of gay and lesbian persons, unlike harassing speech that properly could be limited.**

Supreme Court precedent makes it clear that the only applicable exception to Ms. Gillman's right to free speech is *Tinker's* prohibition against speech that is materially and substantially disruptive.  There can be no reasonable argument that the rainbow stickers and clothing, the "I support gays" and "Equal, Not Special Rights" slogans, and the other political speech at issue here is "lewd," "vulgar," "indecent," or "profane," *Bethel Sch. Dist. No. 403 v. Fraser,* 478 U.S. 675, 683 (1986); that it is "school-sponsored" (e.g., part of school newspaper or publication) or can be "reasonably perceive[d] to bear the imprimatur of the school," *Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 271, 273 (1988); or that it advocates illegal drug use, *Morse*, 127 S.Ct. at 2625.  Nor can there be a plausible contention that rainbow stickers and other positive symbols and slogans supporting the fair treatment of gay and lesbian persons are in any way comparable to the display of a Confederate flag, which has been historically associated with lynchings and other abhorrent acts against racial minorities, the inherent symbolism of which might crush another student's self-worth.  *Cf. Scott* v. *Sch. Bd. of Alachua County*, 324 F.3d 1246, 1249 (11th Cir. 2003) (noting the Confederate flag's historical roots in racial prejudice and violence); *Denno* v. *Sch. Bd. of Volusia County*, 218 F.3d 1267 (11th Cir. 2000) (same).  In contrast, the positive symbols and slogans that Ms. Gillman seeks to express affirm the values of respect and tolerance.  *Cf. Zamecnik ex*

*rel, Zamecnik* v. *Indian Prairie Sch. Dist. No. 204 Bd. of Educ.*, 2007 WL 1141597, *9 (N.D. Ill. 2007) (prohibiting a "Be Happy, Not Gay" t-shirt).

Furthermore, the Defendants' claim that rainbow stickers and other gay-affirming slogans reflect membership in a "secret society" or "illegal organization" is baseless.  (*See* Sch. Bd. Letter (Nov. 12, 2007), Ex. 2; FLA. STAT. § 1006.14 (2007) (proscribing a "secret society"); Holmes Dist. Sch. Bd., Code of Student Conduct (2007-2008), p. 9, *available at* http://hdsb.org/sitedocumentation/studentCOC0708.pdf (last visited Feb. 11, 2008) (defining an *illegal organization* as an action — "any attempt to use the school day for activities that are not school related or school sponsored" — and likewise prohibiting students from wearing "any color, clothing, insignia, emblem, jewelry, or other object in such a manner as to indicate membership or association with any secret organization").  The censored expressions at issue here do not denote membership in a secret society—certainly not any more than the black armbands did in *Tinker* or the freedom buttons did in *Burnside.*  And nothing about being gay or supporting gay civil rights is illegal or indicative of membership in a "secret society."

Indeed, Defendants' policies concerning "illegal organizations" are unconstitutionally overbroad because they "create an impermissible risk of suppression of ideas."  *Virginia* v. *Black,* 538 U.S. 343, 365 (2003) (striking down cross-burning ban as facially unconstitutional because the statute could impermissibly penalize core political speech); *Ashcroft* v. *Free Speech Coal.*, 535 U.S. 234, 244 (2002) ("The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere.").  Ponce de Leon's prohibition of "illegal

organizations" by its own terms could prohibit a student from asking another student quietly during lunch, "what are you doing this weekend," because the question would be using the school day in a way that is not school-sponsored.  The policies on their face could also prohibit students from discussing the upcoming presidential election or their religious beliefs during lunchtime or recess.  *See* Holmes Dist. Sch. Bd., Code of Student Conduct (2007-2008), p. 9, *available at* http://hdsb.org/sitedocumentation/ studentCOC0708.pdf (last visited Feb. 11, 2008).  It is beyond question that the activities noted above, as well as the speech at issue here, are protected by the First Amendment.

> **D.     Even if plaintiff's speech was disruptive under *Tinker*—which it is not—plaintiff has a separate independent right to be free from viewpoint discrimination.**

Ms. Gillman is entitled to relief for Mr. Davis's viewpoint discrimination, even if this Court finds that her political speech was "materially disruptive"—although, as noted above, it was not—under *Tinker*.  *Holloman*, 370 F.3d at 1279-82 (Part II., D.).  As the Eleventh Circuit explained in *Holloman*, "[g]overnment actors may not discriminate against speakers based on viewpoint, even in places or under circumstances where people do not have a constitutional right to speak in the first place."  370 F.3d at 1280 (citations omitted).

Here, there is ample evidence that the motivation behind Mr. Davis's censorship is his disagreement with Ms. Gillman's views concerning gay civil rights.  (Harris Decl., Ex. 4, ¶ 5; Davis Notes, Ex. 5.)  As an educator, Mr. Davis should provide all of his students with an equally welcoming learning environment.  But Mr. Davis told at least one student—Ms. Harris—that being gay was "not right" and that being gay is

"against the Bible."  (*See* Harris Decl., Ex. 4, ¶ 5.)  He also informed Ms. Harris that he

hoped that she would not "go down that road" of being gay and forbade her from

identifying herself as a lesbian at school.  (*Id*.)  Indeed, as confirmed by his own notes of

his interrogations of numerous students in late September 2007, Mr. Davis was so

consumed with identifying which students at Ponce de Leon were supportive of gay civil

rights, that he took down the names of students who had drawn rainbows and "gay pride"

on their hands, notebooks, and pieces of paper.  (*See* Davis Notes, Ex. 5.)

Because there is strong evidence that the censorship of Ms. Gillman's and

other students' expression is motivated by Mr. Davis's disapproval of the pro-gay nature

of their speech, there also is a substantial likelihood that Ms. Gillman will prevail on her

First Amendment claim for viewpoint discrimination.

## II.    Plaintiff is suffering and will continue to suffer irreparable injury unless this Court issues an injunction.

Defendants have placed an unlawful prior restraint on Ms. Gillman's

freedom to express her support for the fair treatment of gay and lesbian persons, by

suspending other students who wore slogans and symbols who expressed similar ideals,

and by their statements in their November 12, 2007 letter, threatening penalties against

such speech.  (*See* Sch. Bd. Letter (Nov. 12, 2007), Ex. 2.)  Ms. Gillman reasonably

believes that she would be subject to disciplinary action if she expresses her support for

gay and lesbian people at school.  (*Id.*; Gillman Decl., Ex. 3, ¶ 6.)

Defendants have successfully prevented Ms. Gillman from exercising her

First Amendment right to freedom of speech, and if the Court fails to grant injunctive

relief promptly, Defendants have given every indication that they will continue to violate

Ms. Gillman's constitutional rights indefinitely.  This violation of Ms. Gillman's freedom of expression constitutes a de facto irreparable injury because, as the Supreme Court has noted, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373 (citation omitted), *followed by KH Outdoor*, 458 F.3d at 1271-72.  Preliminary relief is essential to safeguard plaintiff's constitutional rights during the pendency of these proceedings, particularly because Ms. Gillman, who is now a junior, will likely graduate by the time that the lawsuit concludes.

**III.     The threatened injury to plaintiff outweighs whatever harm the preliminary injunction could cause Defendants.**

Defendants cannot show that the entry of a preliminary injunction will harm them in any way.  There is no evidence that Ms. Gillman's passive and silent display of rainbow stickers, or articles of clothing stating her support for gay civil rights, have caused or will cause any disruption to the discipline or daily routine of Ponce de Leon.

A preliminary injunction in this case will not prevent Defendants from even-handedly enforcing school policies against disruptive conduct or misbehavior.  To the extent that the Defendants are concerned with possible disruptive reactions to Ms. Gillman's forms of expression at issue here, they may still fairly punish students who break school conduct rules, as is their duty under the law.

**IV.     The relief sought by Ms. Gillman will serve the public interest.**

Protecting Ms. Gillman's right to express her views is in the public interest because it is generally accepted that American society at large, and therefore its

subset at Ponce de Leon, benefits from peaceful expression and the exchange of ideas. As the Supreme Court has stated, "[t]he vitality of civil and political institutions in our society depends on free discussion . . . . [I]t is only through free debate and free exchange of ideas that government remains responsive to the will of the people and peaceful change is effected.  The right to speak freely and to promote diversity of ideas and programs is therefore one of the chief distinctions that sets us apart from totalitarian regimes."  *Terminiello*, 337 U.S. at 4 (citing *De Jonge* v. *Oregon*, 299 U.S. 353, 365 (1937)); *see also KH Outdoor*, 458 F.3d at 1272; *Iowa Right to Life Comm., Inc.* v. *Williams*, 187 F.3d 963, 970 (8th Cir. 1999) ("[T]he public interest favors protecting First Amendment freedoms."); *ACLU* v. *Reno*, 929 F. Supp. 824, 851 (E.D. Pa. 1996) ("No long string of citations is necessary to find that the public interest weighs in favor of having access to a free flow of constitutionally protected speech.") (citing *Turner Broad. Sys., Inc.* v. *FCC*, 512 U.S. 622, 641 (1994) ("At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence.  Our political system and cultural life rest upon this ideal.").

        Protecting freedom of speech resonates strongly in the context of America's public high schools.  Indeed, as the Supreme Court noted in *Tinker,* "[t]he vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools."  393 U.S. at 512 (quoting *Keyishian* v. *Bd. of Regents*, 385 U.S. 589, 603 (1967)).  Upon graduation, today's American public school students enter a much more complex and diverse community than their parents did when they

graduated.  Modern technology has made it possible to connect instantaneously with people of different languages, cultures, and lifestyles; and today's students must be prepared to effectively communicate with and respect individuals who have points of views entirely foreign from their own.  Ponce de Leon also recognizes the complexity of the world its students will be entering, as they seek to educate children who "understand a world of many cultures and different beliefs."  Ponce de Leon High School, *Beliefs, Vision, & Mission*, *available at* http://pdlhs.hdsb.org/beliefs (last visited Feb. 11, 2008). Stifling a free exchange of ideas about different lifestyles does a disservice to all Ponce de Leon students, as well as the American public at large.

In fact, following *Tinker*, numerous courts have concluded that the public interest is unequivocally served by permitting students to engage in the free exchange of ideas.  *See, e.g., Chambers* v. *Babbitt,* 145 F. Supp. 2d 1068, 1072 (D. Minn. 2001) (overruling school district's censorship of "Straight Pride" t-shirt, and noting that "[a]ll students benefit from the respectful and thoughtful exchange of ideas and sharing of beliefs and practices"); *Barber*, 286 F. Supp. 2d at 849, 858 (overruling school district's censorship of "Bush:  International Terrorist" t-shirt, and noting that "[i]n fact, as the *Tinker* Court . . . [has] emphasized, students benefit when school officials provide an environment where they can openly express their diverging viewpoints and when they learn to tolerate the opinions of others.").

## <u>CONCLUSION</u>

By her Motion for Preliminary Injunction, Ms. Gillman asks only that school officials honor her constitutionally protected right to free expression by allowing

her to display at school words and symbols that express her views in support of gay and lesbian persons.  As discussed above, she has met her burden and respectfully requests that the Court grants her motion for a preliminary injunction.

## N.D. FLA. LOC. R. 7.1(B) CONFERENCE COMPLIANCE

Plaintiff's counsel has conferred with counsel for both Defendants and has attempted in good faith to resolve by agreement the issues raised; however, Defendants oppose the relief sought, and no issues were resolved.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed today the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all persons registered for this case.  Additionally, I both emailed and mailed via U.S. Mail a copy of the foregoing on the same date to the following: Holly A. Dincman (hdincman@cmadslaw.com) and Michael Spellman (mspellman@coppinsmonroe.com), Coppins Monroe, et al., P.O. Box 14447, Tallahassee, FL 32317-4447.

Dated: February 11, 2008

**RESPECTFULLY SUBMITTED,**

<u>s/ Benjamin James Stevenson</u>
Benjamin James Stevenson (Fla. Bar. No. 598909)
American Civil Liberties Union Found. of Florida
Post Office Box 12723
Pensacola, FL  32591-2723
bstevenson@aclufl.org
Tel:  850.429.9128 & 786.363.2738 (Direct)
Fax:  786.363.1985

Randall C. Marshall (Fla. Bar No. 0181765)
RMarshall@aclufl.org
Robert F. Rosenwald, Jr. (Fla. Bar No. 0190039)
RRosenwald@aclufl.org
American Civil Liberties Union Found. of Florida
4500 Biscayne Blvd., Suite 340
Miami, FL  33137
Tel:  786.363.2713
Fax:  786.363.1392

Christine P. Sun (Cal. Bar. No. 218701)
ACLU LGBT Rights Project
P.O. Box 120160
Nashville, TN  37212
csun@aclu.org
Tel:  615.329.9934
Fax:  615.329.9796

*Counsel for Plaintiff*