# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

HEATHER GILLMAN, through next
friend and mother Ardena Gillman,

    Plaintiff,

vs.                            CASE NO. 5:08cv34-RS-MD

SCHOOL BOARD FOR HOLMES
COUNTY, FLORIDA,

    Defendant.
_____/

## ORDER ON PLAINTIFF'S MOTION TO COMPEL

Before me is "Plaintiff Heather Gillman's Motion to Compel Deposition Testimony" (Doc. 44). Plaintiff requests entry of an order compelling David Davis, the principal of Ponce de Leon High School, to answer questions that he allegedly refused to answer during a deposition proceeding on April 15, 2008. The questions relate to Davis's personal, political, and religious beliefs about homosexuality. Defendant opposes the motion (Doc. 49).

### I. Background

Plaintiff Heather Gillman, through her mother, Ardena Gillman, has sued Defendant School Board for Holmes County, Florida, alleging that the School Board has violated her right to free speech under the First Amendment to the federal Constitution. Plaintiff, an eleventh grade student at Ponce de Leon High

School, contends that the School Board has unlawfully placed a viewpoint-based prior restraint on her political speech by prohibiting Plaintiff and other students from wearing t-shirts, armbands, stickers, or buttons containing slogans and symbols which advocate the acceptance of and fair treatment for persons who are homosexual.[1]

The complaint (Doc. 1) also named David Davis, the principal of Ponce de Leon High School, as a defendant in his official capacity. Pursuant to the parties' stipulation (Doc. 27), I entered an order dismissing the complaint against Davis in his official capacity with prejudice (Doc. 30). Plaintiff, nevertheless, requests that I enter an order compelling Davis to answer questions that he allegedly refused to answer during a deposition proceeding on April 15, 2008. The questions relate to Davis's personal, political, and religious beliefs about homosexuality. The questions and Davis's responses, as set forth in the motion, are as follows:

> Q: Is it part of your job as principal to promote tolerance of all people?
>
> A. Again, that's – I think that's a political statement, and I don't want to answer that.
>
> Q. Okay. Do you believe that students need to learn at school about a world of many cultures and different beliefs?
>
> A. Again, you're getting into a political statement that I

---

[1] Allegedly banned from the school are stickers, armbands, buttons, and t-shirts displaying rainbows, pink triangles, and the following slogans: "Equal, Not Special Rights," "Gay? Fine By Me," "Gay Pride," "I Support My Gay Friends," "God Loves Me Just the Way I Am," I'm Straight, but I vote Pro-Gay," "I Support Equal Marriage Rights," "Pro-Gay Marriage," Sexual Orientation is Not a Choice. Religion, However, Is." (Compl., Doc. 1:10 at ¶ 21.)

don't want to answer.  A political view, I should say.

Q.  Okay.  Do you think that it's important as – do you think it's important as a principal of [Ponce de Leon] to promote equity, tolerance and understanding, acceptance of all people?

A.  Again, you're asking me a political statement and although – so I don't want to get into any political issues.

Q.  Okay.  Do your – do your political beliefs require you to follow God's word over laws or statutes that you believe would violate your religion?

A.  I'm not going to address my political beliefs.

Q.  So I take it you won't answer any questions as to whether if you believed a law violated your religion whether you would follow your religious beliefs as opposed to following that law?

A.  Again, as I stated this morning, I'm not going to address religious beliefs nor political issues.

Q.  Okay.  Can you tell me if your religion requires you to warn others about behavior that you believe is dangerous or sinful?

A.  I'm not going to discuss my religious beliefs.

Q.  Okay.  Same question, does your religion compel you to speak out against the harmfulness of the homosexual lifestyle?

A.  Again, I'm not going to discuss my political beliefs.

Q.  So you refuse to answer the question of whether you

agree or disagree with the view that gays and lesbians should be allowed to marry?

A. I do refuse to answer that, and would respectfully refuse, of course, and I certainly would be willing to answer the questions if the judge deemed it was necessary for me to.

Q. Okay. Do you believe that homosexuality is clearly against the Bible?

A. Again, you're getting into my personal beliefs and my faith, and I choose not to answer those questions.

Q. Do you agree or disagree with the political view that God loves people who engage in the gay lifestyle?

A. Again, you're asking me a question that deals with my personal beliefs and such things, I don't want to answer those questions.

Q. Do you agree that sexual orientation is not a choice?

A. That's a political – that's a political statement, and that's a personal belief. I'm not going to answer that.

Q. Okay. So you can't say one way or the other whether the debate over whether gays and lesbians should be allowed to marry is political?

A. Again, that would get into my personal beliefs, and I don't want to go there.

Q. Do you agree with the proposition that religion is a choice?

A. Again, we're getting into – getting into personal views

and such. And I don't want to answer those questions.

(Mot., Doc. 44:13-14.)

Plaintiff contends that Davis's answers to the questions are necessary to prove her claim of viewpoint discrimination and to test the sufficiency of Defendant's articulated justification for prohibiting the speech at issue. According to Plaintiff, the deposition testimony of various witnesses suggests that Davis has strong personal, political, and religious opinions and beliefs about homosexuality and that such views influenced his decision to prohibit the identified speech.

Both Davis and the School Board, however, assert that they are justified in forbidding the speech at issue because the speech arises from students' participation in an "illegal organization" at the school and has caused disruptions. The School Board contends that Plaintiff is not entitled to the requested discovery because (1) the School Board, not Davis, is the named defendant in this lawsuit; (2) "it is the School Board's motivation that is at issue, not the alleged personal views of Mr. Davis"; (3) "no arguable theory . . . attaches liability to the School Board based on Mr. Davis' personal views"; and (4) Fed. R. Evid. 610 prohibits the use of Davis's religious beliefs or opinions for the purpose of attacking his truthfulness or credibility (Resp., Doc. 49:3-4.) Accordingly, Defendant asserts that the questions at issue are not reasonably calculated to lead to the discovery of admissible evidence.

## II. Analysis

### A. Law

A motion to compel a witness to answer questions asked at a deposition should be granted if the questions are relevant to the subject matter involved in the action and denied if the questions seek information that is privileged. Fed. R. Civ. P. 26(b)(1). The School Board does not contend that the information sought from Davis is privileged. Accordingly, the issue is whether the information requested is relevant.

"Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. The Supreme Court, in the landmark decision of *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947), stated:

> [T]he deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession.

329 U.S. at 500-01, 67 S. Ct. at 388-89, quoted in *Dollar v. Long Mfg., Inc.*, 561 F.2d 613, 616 (5th Cir. 1977)[2]. Of particular import to the issues raised in the pending motion is the principle that discovery is not to be denied simply because it relates to a claim or defense that is being challenged as insufficient or untenable:

---

[2] In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the newly created Eleventh Circuit adopted, as binding precedent, all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

> To hold otherwise, this court would have to determine in the context of a discovery motion whether the legal theories underlying [the] claimed defenses are sound. Ordinarily, courts will avoid such an exercise, see *Kelsey-Hayes Co. v. Crane Co.*, 21 Fed. R. Serv.2d 384, 385 (E.D. Mich. 1975); *Humphrey's v. Exterminating Co. v. Poulter*, 62 F.R.D. 392, 393 (D. Md. 1974); 4 Moore's Federal Practice P26.56[1] at 26-124 (2d ed. 1982), although it may be proper where the claim is plainly untenable or insubstantial and compliance would be burdensome. *See Apel v. Murphy*, 70 F.R.D. 651, 654 (D. R.I. 1976); *Humphrey's Exterminating Co. v. Poulter*, supra, 62 F.R.D. at 393; *Waldron v. British Petroleum Co.*, 4 Fed. R. Serv. 2d 487, 488 (S.D.N.Y. 1961). *See also Smith v. Schlesinger*, 513 F.2d 462, 473 (2d Cir. 1975).

*First Jersey Nat'l Bank v. Nat'l Bank of North America*, 1983 U.S. Dist. LEXIS 19894, 3-4 (S.D.N.Y. Jan. 20, 1983). *See also* 8 Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2008 at 104 (2d ed. 1994).

**B. Application**

The questions at issue relate to sensitive matters that require the school principal to articulate his personal, political, and religious beliefs and opinions about homosexuality. While ordinarily, such questions are irrelevant to the subject matter of a dispute and may be employed for the improper purposes of harrassing or embarrassing a deponent, the questions are directly relevant to the subject matter of this lawsuit. The complaint alleges that Davis inquired about the sexual orientations of various students and told them that they "should not be gay" (Compl., Doc. 1:6 at ¶ 13, 8 at ¶ 18); "invited an anti-gay preacher to speak at a mandatory assembly" (Compl., Doc. 1:7 at ¶ 14); and told students that "being gay

is against the Bible" (Compl., Doc. 1:8 at ¶ 18).

At least some evidentiary support for these allegations is found in the deposition excerpts that are attached to the motion. One deponent, presumably a mother of a student at the school, testified that Davis told her: "[I]f I was in a church, was married, and took my kids to church regularly that my children wouldn't be a part of this gay rights issue that's going on in his school." (Mot. Exh., Doc. 45-3:23, lines 9-12.) Another deponent, a student, testified that Davis told her that "[b]eing gay isn't right." (Doc. 45-4:4, line 17.) Another student testified that Davis told her that "being gay was against the Bible." (Mot. Exh., Doc. 45-5;2, line 17.). Finally, a third student testified that Davis "gave me his personal views" about homosexuality: "He said that he did not think it was right, and it did not need to be going around the school." (Mot. Exh., Doc.45-6:2, lines 19-20.)

The deposition testimony cited above provides at least some evidentiary support for Plaintiff's claim of viewpoint-based discrimination arising from Davis's personal, political, or religious beliefs about homosexuality. Although I reserve judgment about the merits of all claims and defenses until the full presentation of evidence, I must find that the allegations, in conjunction with the referenced deposition testimony, directly implicate the principal's personal, political, and religious beliefs and opinions about homosexuality. Accordingly, the deposition questions at issue are proper and relevant.

The School Board's contentions that the questions are irrelevant because Davis is not a named defendant and that no arguable theory attaches liability to the School Board based on Mr. Davis' personal views are without merit. Defendant improperly asserts a legal conclusion about the merits of the claims and defenses in

this lawsuit. Discovery, however, is not to be denied simply because it relates to a claim or defense that is being challenged as insufficient or untenable. *First Jersey Nat'l Bank v. Nat'l Bank of North America*, 1983 U.S. Dist. LEXIS 19894, 3-4 (S.D.N.Y. Jan. 20, 1983). *See also* 8 Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2008 at 104 (2d ed. 1994). The proper procedure by which Defendant may assert its entitlement to judgment as a matter of law is by filing a motion for summary judgment or by appropriate motion made during or after trial.

I also note that, in its response to the motion, the School Board identified various avenues through which it could be held liable. The School Board has conceded that it, as a governmental entity, may be liable under § 1983 if it "caused the constitutional violation through its official policy, practice or custom" or if it "ratified or adopted" Davis's alleged personal views as its own (Resp., Doc. 49:2-3). Whether those requirements are satisfied in this case is uncertain at this point because the analysis requires findings of fact based on the evidence and conclusions of law. Accordingly, I express no opinion on the issue at this time. However, Defendant has implicitly conceded that Plaintiff's claims against the School Board based on Davis's personal beliefs and opinions are not "untenable." Therefore, the requested discovery cannot be foreclosed on that basis.

Finally, Defendant's contention that the requested discovery should be denied on the ground that Fed. R. Evid. 610 prohibits the use of Davis's religious beliefs or opinions for the purpose of attacking his truthfulness or credibility is also without merit. Rule 610 states that:

> Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the witness' credibility is impaired

>	or enhanced.

Fed. R. Evid. 610.

Thus, the rule proscribes the admission of evidence of Davis's beliefs or opinions on matters of religion only for the single, limited purpose of attacking his *credibility*.  The rule, by its plain language, does not foreclose the admission of religious beliefs and opinions where, as here, such beliefs and opinions directly relate to the subject matter of the dispute.  Plaintiff has not alleged that Davis's religious beliefs and opinions impair his credibility; rather, Plaintiff has alleged that Davis has violated her right to free speech because his religious beliefs and opinions conflict with her own.

In any event, Fed. R. Evid. 610 governs whether Davis's religious beliefs and opinions are admissible as evidence at trial.  The rule has no bearing on discovery disputes, which are guided by the Federal Rules of Civil Procedure.  I remind Defendant that this case will proceed by bench trial.  If, at trial, Plaintiff attempts to admit Davis' religious beliefs and opinions for the purpose of showing that by reason of their nature his *credibility* is impaired, Defendant may enter an appropriate objection, and I will enter a proper ruling.  However, Defendant's request to prevent potentially relevant discovery based on pure speculation about how the requested discovery might be used at trial is without merit.

## Conclusion

1. "Plaintiff Heather Gillman's Motion to Compel Deposition Testimony" (Doc. 44) is **GRANTED**.

2. The parties shall complete the deposition of David Davis not later than May 2, 2008, at 12:00 PM Central Standard Time.

3. Mr. Davis is ordered to appear for deposition and shall completely and fully answer all questions set forth in Exhibit A of Plaintiff's Declaration in Support of Plaintiff's Motion to Compel (Exh. A, Doc. 45-2:1-2) and in the Background section of this opinion.

4. Plaintiff's counsel is permitted to ask follow-up questions that reasonably relate to Mr. Davis's personal, political, or religious views about homosexuality. Mr. Davis shall answer all questions.

5. Consistent with the representations of Plaintiff's counsel in the motion that she "recognizes the sensitivity of seeking the personal views of any witness concerning gay civil rights issues," Plaintiff's counsel is directed to "**respectfully** elicit such testimony from Principal Davis." (Mot., Doc. 44:7.)

**ORDERED** on April 25, 2008.

/s/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**